## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## FOURTH DIVISION

_____

| | |
|---|---|
| Lieutenant Medaria Arradondo, Lieutenant Donald Harris, Sergeant Charles Adams, Sergeant Dennis Hamilton, and Lieutenant Lee Edwards | Case Type:  Employment |
| | Court File No.:  07-4736 (MJD/SRN) |
| Plaintiffs, | |
| v. | **PLAINTIFFS' MEMORANDUM OF LAW OPPOSING DEFENDANTS' RULE 12(f) MOTION TO STRIKE PLEADINGS** |
| City of Minneapolis, the Minneapolis Police Department, and Timothy Dolan, an individual, | |
| Defendants. | |

_____

### ISSUE PRESENTED

Plaintiffs commenced this action against Defendants seeking redress for unlawful race and color discrimination and harassment.  The Amended Complaint includes numerous allegations that when proven, will be critical evidence supporting the Plaintiffs' causes of action.  By this motion under Fed. R. Civ. P. 12(f), Defendants seek at the very outset of this case to avoid answering these allegations and to bar them altogether from this Court's consideration.

Should this Court strike these relevant, pertinent and proper allegations pursuant to Rule 12(f)? The answer is, no, and Plaintiffs respectfully request that this Court deny Defendants' motion in its entirety.

# INTRODUCTION

On December 10, 2007, Plaintiffs, five high-ranking, long-time members of the Minneapolis Police Department, filed and served their Amended Complaint against Defendants. Each Plaintiff seeks redress under federal, state and local anti-discrimination laws and/or ordinances.[1] The Amended Complaint sets forth disparate treatment claims, disparate impact claims, retaliation claims, harassment claims, and claims that the Plaintiffs endured a racially hostile environment, from the inception of their employment with Defendant Minneapolis to the present day. Rather than affirm or deny Plaintiffs' allegations, Defendants have brought this Rule 12(f) motion to strike a large portion of the Amended Complaint. Plaintiffs submit this Memorandum of Law in opposition to Defendants' motion.

Every allegation that Defendants seek to strike makes reference to facts that when proven will be direct evidence of discrimination, indirect evidence of discrimination, or provide background to Plaintiffs' claims of ongoing discrimination and harassment, including the creation and maintenance of a racially hostile working environment by Defendants. Although the challenged allegations are far-reaching in temporal scope, they are not impertinent. Although the challenged allegations make Defendants uncomfortable, they are not improper. In fact, the challenged allegations are essential to Plaintiffs' causes of action.

It is precisely because the challenged allegations pertain to matters that are so

---

[1] 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 1983 ("Section 1983"); the Minnesota Human Rights Act, Minn. Stat. § 363A.01, et seq. ("MHRA"); and, the Minneapolis Civil Rights Ordinance §§ 139.40(b)(3) and (m) ("MCRO").

highly relevant and so very important to Plaintiffs' causes of action that Defendants now seek to avoid them. Rule 12(f) does not countenance such evasion, nor does it permit such relevant and important sections of a pleading to go unanswered or unconsidered. Therefore, respectfully and for reasons more fully elaborated below, this Court should not strike any portion of the Amended Complaint and should deny Defendants' motion in its entirety.

**STATEMENT OF FACTS**

On December 20, 2007, Defendants filed their motion to strike, under Rule 12(f), approximately thirty-nine paragraphs of Plaintiffs' Amended Complaint. In general terms, the allegations that Defendants seek to avoid comprise the following:

**I.      Past Acts of Discrimination by Defendants.**

First, Defendants seek to strike allegations pertaining to the history of unlawful discriminatory conduct of Defendants.[2] The alleged misconduct spans more than twenty years and is directly relevant to Plaintiffs' actionable hostile work environment claims. In addition, these allegations are when proven relevant background evidence within which to view the more recent alleged instances of discrimination. In alleging discrimination that spans twenty years, the Amended Complaint (¶ 135) necessarily makes reference to the conduct of "past administrations." Many of the discriminatory acts fall within the time limits which apply to discreet acts of discrimination. Still, many other of the alleged discriminatory acts occurred prior to these time limits.

---

[2] See, Defendants' Memorandum of Law, pp. 4-6, wherein Defendants assert that matters which fall outside the scope of statutes of limitations related to Plaintiffs' causes of action should be struck.

The specific alleged past acts of discrimination that Defendants seek to strike from the Amended Complaint include the following:  in 1992, someone from within the police department sent racist, hate mail to African American police officers, signed "KKK" (Amended Complaint, ¶ 14); from 1995-2000, Defendants discriminated against Plaintiff Adams because he spoke out against racism by refusing to promote him to sergeant (Amended Complaint, ¶ 128); Plaintiff, Hamilton has witnessed a history of discrimination against African American officers with respect to detailed assignments (Amended Complaint, ¶ 135); and, from 1998 to 2003, Defendants discriminated against Plaintiff Hamilton by failing to provide him with a career enhancing opportunity that was provided to white police officers (Amended Complaint, ¶ 139).

## II.   Acts of Alleged Discrimination Committed by Defendants Against Other Persons and in Hiring Practices.

Second, Defendants seek to strike allegations pertaining to acts of discrimination committed by Defendants against persons other than the Plaintiffs, as well as allegations pertaining to discriminatory hiring practices.[3]  The alleged acts of discrimination against other persons and in hiring practices are when proven, a critical part of Plaintiffs' actionable hostile work environment claims. In the alternative, these allegations are when proven, relevant as indirect evidence of individual instances of discrimination directed at Plaintiffs.

Specifically, Plaintiffs (Amended Complaint ¶¶ 30, 34-35, 39-41, 50-52, 54-55,

---

[3] See, Defendants' Memorandum of Law, pp. 8-11, wherein Defendants assert that all allegations relating to individuals not participating in this lawsuit, as well as allegations of discriminatory "hiring practices", should be struck as immaterial.

60, 65-66, 68, 76, 82, 87, 90, 107, 119, 127, 133, and 148) allege that Defendants have subjected them, other African American police officers, and members of the African American community to racially hostile and discriminatory treatment.  Plaintiffs allege further (Amended Complaint, ¶¶ 17, 27-29, 129, and 144) that the racially discriminatory and hostile actions of Defendants include biased "hiring practices" unfairly directed at African Americans.  Finally, the Amended Complaint (¶¶ 20, 21, 24 and 26) makes reference to the Defendants' treatment of Valerie Wurster, an African American, high ranking, female police officer who is allegedly on the brink of retirement.

### III. Allegations of Failures to Keep Promises Aimed at Increasing Diversity and Enhancing Opportunities for African Americans.

Third, Defendants seek to strike allegations pertaining to promises contained in a federally mediated agreement to which Defendant Minneapolis is a party ("the federal mediation agreement").[4] These allegations are, when proven, evidence that will support an inference of discrimination on the part of Defendants in their treatment of Plaintiffs. In particular, the Amended Complaint (¶¶ 77-82) alleges that Defendant Minneapolis promised to implement policies designed to increase the number of African American police officers and to increase opportunities for African Americans who were already members of the police.  The Amended Complaint alleges further that Defendant Minneapolis has failed to follow through on the promises to which it is obligated under the federal mediation agreement.

---

[4] See, Defendants' Memorandum of Law, p. 10, wherein Defendants assert that any allegation that Defendants have failed to fulfill obligations under the federal mediation agreement is immaterial and should be struck.

**IV.     Allegations of Past Racist Statements and Conduct on the Part of Chief Dolan and Other High Ranking Police Officers.**

Fourth, Defendants seek to strike allegations pertaining to past discriminatory statements and conduct of Defendant Police Chief Dolan and other high ranking police officers.[5] The alleged racist and discriminatory statements and conduct are tangentially related to alleged adverse employment actions suffered by Plaintiffs. These alleged statements and conduct are, if proven, relevant and admissible as part of a hostile work environment or as indirect evidence of discrimination.

In particular, the Amended Complaint (¶¶ 12 and 15) contains allegations that white police officers, other than Defendant Dolan, have (over a span of years) made racist and discriminatory statements with impunity.  As a particular example of such statements, the Amended Complaint (¶ 15) alleges that Lt. Robert Kroll (who is a white co-worker of the Plaintiffs and a close-confidant and friend of Defendant Dolan) openly displays a racist symbol (a White Power badge) on his motorcycle jacket and that he has made discriminatory statements regarding homosexual employees of Defendant Minneapolis with impunity.  The Amended Complaint (¶ 16) also specifically, alleges that Defendant Dolan, as a teenager, committed alleged hate crimes against African American students and families in Minneapolis and that Defendant Minneapolis failed to properly investigate these alleged hate crimes before confirming Defendant Dolan as Chief of Police.

_____

[5] See, Defendants' Memorandum of Law, pp 7-8, 11, asserting that allegations regarding racist and discriminatory statements and conduct of Lt. Kroll and Chief Dolan are impertinent and scandalous matters subject to strike.

Plaintiffs oppose Defendants' motion to strike in its entirety.   In response to Defendants' motion, Plaintiffs submit this memorandum of law, which sets forth the reasons why each of the challenged allegations are pertinent and proper and, therefore, not subject to strike under Rule 12(f).

## STANDARD OF RULE 12(f) MOTION TO STRIKE

Although Rule 12(f) confers upon courts the discretion to, at any time, strike impertinent, immaterial or scandalous matters from a pleading, such motions are viewed with disfavor and are infrequently granted. *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007); *See also, Sobba v. Elmen*, 462 F. Supp. 2d 944, 946 (E.D.Ark. 2006); *See also, Mille Lacs Band of Chippewa Indians v. State of Minn.*, 952 F. Supp. 1362, 1395 (D. Minn. 1997).   The disfavor with which courts view such motions arises from the great potential that requests to strike allegations may be employed as time-wasting litigation tactics. *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 645 (N.D.Tex. 2007); *see also Germaine Music v. Universal Songs of Polygram*, 275 F. Supp. 2d 1288, 1299-1300 (D.Nev. 2003).   They are so disfavored, in fact, that the granting of a motion to strike a pleading is regarded as an "extreme remedy." *See*, *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

The burden of proof to strike allegations from a pleading lies with the moving party, and this burden is best described as "formidable."   *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of America*, 474 F. Supp. 2d 75, 79 (D.D.C. 2007).   When entertaining a motion to strike, this Court applies the same standard as a Rule 12(b)(6) motion--this Court deems as admitted all of the non-moving party's facts as plead, draws

all reasonable inferences in the pleader's favor, and resolves all doubts in favor of denying the motion to strike. *Jankovic v. Int'l Crisis Group*, 429 F. Supp. 2d 165, 170 (D.D.C. 2006).  The moving party must satisfy at least two requirements: (1) it must show that the allegations it seeks to strike are unequivocally unrelated to the non-moving party's claims; *and* (2) it must show that the allegations will *prejudice* the moving party if permitted to remain in the pleadings. *Sobba v. Elmen*, 462 F. Supp. 2d at 946.  Potential prejudice exists only if the impugned allegations might confuse the legal issues, or by their length and complexity place an undue burden on the non-moving party, or create undue and burdensome expense in discovery and/or trial. *Canadian St. Regis Band of Mohawk Indians v. New York*, 278 F. Supp. 2d 313, 325 (N.D.N.Y. 2003).  Importantly, under Rule 12(f) "prejudice is not assumed simply by the inclusion in the amended complaint of the verbose, immaterial, conclusory or evidentiary matter[.]" *County Vanlines v. Experian Information Systems*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002).

In order to prevail in striking matters as irrelevant, a moving party must show that the challenged allegations "can have no possible bearing to the subject matter of [the] litigation." *Pabst Brewing Co., v. Jacobs*, 1982 WL 1370, *8 (D. Minn. 1982) (c*iting*, *Schram v. Krischell*, 84 F.R.D. 294, 299 (D. Conn. 1979) (unpublished decision attached hereto and hereinafter referred to as Klassen Aff. Ex. 1).  Impertinent allegations are those that do not pertain to, or are unnecessary to the issues in the matter. *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  Immaterial matters are those allegations which either have no essential relationship to the pleader's claim for relief or that contain statements of unnecessary

particulars.  *Id.*  "If there is *any doubt* whether the matter may raise an issue, the motion should be denied." *Southwestern Bell Tel., L.P. v. Missouri Pub. Serv. Comm'n*, 461 F. Supp. 2d 1055, 1064 (E.D.Mo. 2006). (emphasis added)

For purposes of Rule 12(f), a matter is "scandalous" when it *improperly* casts a derogatory light upon a party to the action; thus, a motion to strike portions of a complaint as being "scandalous" will be denied where the statements at issue are relevant to the causes of action and to claims for punitive damages. *Madison Bank v. Simpson*, 122 F.R.D. 547, 551 (E.D.Mo. 1988).  A matter will not be stricken from a pleading where it describes events or acts relevant to the parties' disputes, unless such description includes unnecessary detail.  *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664-65 (7th Cir. 1992) (matter is "scandalous" only if it bears no possible relation to the controversy before the court).

In the present case, Defendants cannot succeed in showing the challenged allegations are impertinent, immaterial or irrelevant.  The challenged allegations, for example, pertain to conduct on the part of Defendants that comprise a continuing hostile work environment; or, the challenged allegations, as another example, relate to matters that, when proven, will be evidence of discriminatory intent.  Likewise, in the present case, Defendants cannot succeed in showing the challenged allegations are scandalous. The case law discussed below makes clear that the allegations which Defendants seek to strike relate to facts that, when proven, will be admissible as evidence and proper for a jury's consideration in hearing the various causes of action of Plaintiffs.

## LEGAL ARGUMENT

I.    **DEFENDANTS' HISTORY OF RACE AND COLOR DISCRIMINATION, INCLUDING ALLEGATIONS THAT RECOUNT UNLAWFUL CONDUCT WHICH PRE-DATES ANY STATUTORY TIME LIMIT FOR FILING A CHARGE OF DISCRIMINATION, ARE RELEVANT TO PLAINTIFFS' CLAIMS**.

Defendants assert that any alleged act of racial discrimination which arose prior to the statutory deadline for filing a charge of discrimination is off limits for this Court's consideration.   Defendants are wrong.   This Court may consider the entire history of Defendants' alleged racial discrimination for two reasons: first, Defendants' alleged past acts of discrimination are each part of an actionable, ongoing hostile work environment claim which is a central issue in this case; and, second, Defendants' alleged past acts of discrimination are each relevant to showing the context of Defendants' more recent acts of alleged discrimination.   These two reasons for looking at all past acts of discrimination and denying Defendants' motion to strike are addressed in turn below.

A.    <u>Allegations Relating to Defendants' Entire History of Discriminatory Acts are an Essential Part of Plaintiffs' Hostile Work Environment Claims and They are Not Subject to Strike.</u>

Unlike discreet acts of discrimination, "a hostile environment is an ongoing nightmare for the employee victim, in legal parlance a 'continuing violation'". *Gipson v. KAS Snacktime Co.*, 83 F.3d 225, 229 (8th Cir. 1996).   In *Morgan*, the United States Supreme Court explicitly recognized the unique, ongoing nature of a hostile work environment. *National Rail Road Passenger Corp. v. Morgan*, 536 U.S. 101, 114-115 (2002).   The Supreme Court explained that hostile work environment claims are composed of a series of separate acts that collectively constitute a single unlawful

employment practice; therefore, they are not subject to challenge as being time-barred in the same manner as claims which seek redress for a discrete act of discrimination. *Id.* So long as one discriminatory act contributing to a hostile work environment occurred within the statutory period of limitations, the entire time period of the hostile work environment may be considered for determining liability. *Id.* The rule expressed in *Morgan*, that courts should consider the entire history of a hostile work environment (including discriminatory acts that pre-date the statutory limitations period), also applies to Section 1981 claims. *See*, *Madison v. IBP, Inc.*, 330 F.3d 1051, 1061 (8th Circuit 2003) (hereafter "*Madison II*").

In *Morgan*, the plaintiff-employee (an African American male) sought relief under Title VII for two types of harm: the harm arising from discreet acts of discrimination inflicted upon him; and, for the harm he suffered as a result of having to endure a hostile work environment. *Morgan*, 536 U.S. at 104-105. Some of the discriminatory acts at issue in *Morgan* arose within the statutory 300-day limit for filing a charge of discrimination; yet, most of the discriminatory acts at issue in *Morgan* arose prior to the 300-day filing period. *Id.* at 106. In assessing the plaintiff-employee's standing, the Court drew an important distinction between the two types of discrimination. *Id.* at 112. The 300-day limit precluded the plaintiff-employee from recovering for any discreet act of discrimination that was beyond the filing deadline. *Id.* The 300-day limit did not, however, preclude the plaintiff-employee from recovering for past acts of discrimination that were beyond the filing deadline, provided that the acts were each part of his hostile work environment claim. *Id.* at 120-121. In clarifying its decision, the Court stated as

follows:  "A charge alleging a hostile environment claim… will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice, and at least one act falls within the (applicable statutory) time period." *Id.* at 122.

In *Madison II*, the Eighth Circuit expanded the holding of *Morgan* to apply to hostile work environment claims asserted under Section 1981. *Madison II*, 333 F.3d at 1061.  The court determined that the plaintiff-employee could recover for all of the illegal acts that were part of the hostile work environment that she had endured. *Id.*  Thus, in awarding damages to the plaintiff-employee, the jury could take into account all past acts of discrimination, stretching from the day when the plaintiff-employee started her employment to the time of suit, regardless of the statutory time limit that would otherwise apply to a charge of a discrete act of discrimination. *Id.*

In the present case, as in *Morgan* and *Madison II*, Plaintiffs seek relief for harm arising from a racially hostile work environment.  Here, the alleged hostile environment includes past acts of discrimination by Defendants that pre-date the statute of limitations periods. [6]  It is these earliest, past acts of alleged discrimination that Defendants seek to strike from the Complaint.  Defendants ask that this Court pay no mind to the earliest incidences of discrimination because the alleged acts, when looked at separately, are beyond the statute of limitations and time-barred.  However, in applying the *Morgan* and

---

[6] The statute of limitations under the Minnesota Human Rights Act is one year.  The Eighth Circuit has held that the *Morgan* analysis applies to the MHRA. *Mems v. City of St. Paul*, 327 F.3d 771 n.10 (8th Cir. 2003).  The statute of limitations under Section 1983 is six years, under Section 1981 is four years, and under the MCRO is one year.

*Madison II* decisions to the instant case, one thing becomes clear:  Regardless of how long ago the alleged acts of discrimination occurred (the allegations generally cover the period 1992 through the present date), because they are each integral to Plaintiffs' hostile work environment claims, they must not be disregarded nor struck from the Amended Complaint.

*Morgan* and *Madison II* dictate that this Court look outside the window for filing a claim related to discreet acts of discrimination when examining Plaintiffs' hostile work environment claims. [7]  Each alleged discriminatory act of Defendants, from the inception of Plaintiffs' employment to the present day, is fair game when considering the alleged hostile work environment. Therefore, none of the allegations relating to Defendants' prior discriminatory acts are subject to strike under Rule 12(f), including the allegations related to the earliest incidences of unlawful conduct (¶¶ 11-14, 128, 135 and 139). Defendants' motion to strike these allegations on the grounds of impertinence and immateriality is wholly without merit and respectfully should be denied.

B.      Allegations Relating to Defendants' Earliest Discriminatory Acts—Unlawful Conduct That Preceded the Applicable Statutory Limitations Periods—Are Essential to Plaintiffs' Causes of Actions as Relevant Background of Defendants' Later Alleged Discriminatory Acts and Thus, These Allegations Are Not Subject to Strike.

The United States Supreme Court has repeatedly recognized that a defendant-

---

[7] The continuing violations theory under *Morgan* (applying Title VII) also applies to hostile environment claims under Section 1983, the MHRA and the MCRO. Because Minnesota courts use Title VII case law to analyze MHRA claims, for example and for purposes of brevity, Plaintiffs believe their hostile work environment claims are properly addressed together in a single analysis.  *See Mems v. City of St. Paul, Dept. of Fire and Safety Servs.*, 327 F.3d 771, 785 n. 11 (8th Cir. 2003) (analyzing MHRA hostile work environment claim under Title VII case law).

employer's history of discrimination is important evidence for use when assessing a claim of more recent discrimination. *See, Morgan*, 536 U.S. at 112 (*citing*, *United Airlines Inc. v. Evans*, 431 U.S. 553, 558 (1977)). Past acts of discrimination, occurring beyond the statute of limitations, are relevant even if they are not independently actionable or part of an actionable hostile work environment claim. *Id.* Therefore, a plaintiff-employee may use a defendant-employer's past discriminatory acts as background evidence to support timely claims of discrimination. *Id.* The statutes unequivocally "[do not] bar an employee from using the prior acts as background evidence to support a timely claim." *Id.*

Following the Supreme Court's lead, judges in this District have consistently denied defendant-employers' requests to strike matters from a Complaint related to past acts of discrimination, even if the acts themselves did not constitute actionable misconduct. *See, Arnold v. Cargill, Inc.*, 2002 WL 1576141, *8 (D. Minn.) (refusing to strike the discriminatory statements made by the defendant-employer's former CEO and Chairman, which statements pre-dated any actionable discrimination, on grounds that such statements were potentially relevant context evidence with respect to the actionable claims) (unpublished decision attached hereto and hereinafter referred to as Klassen Aff. Ex. 2); *See also*, *Philip v. Ford Motor Co*., 2001 WL 670834, *4 (D. Minn.) (refusing to strike the allegations relating to acts of discrimination that were too early in time to be independently actionable and were not part of a continuing violation, on grounds that the past acts may be admissible as "background" to support the plaintiff-employee's contention of racial animus) (unpublished decision attached hereto and hereinafter referred to as Klassen Aff. Ex. 3).

In *Evans*, the plaintiff-employee (a female seeking redress under Title VII) sought to recover for discrimination that originated from actions that the defendant-employer committed four years prior to the filing of the plaintiff-employee's lawsuit. *Evans*, 431 U.S. at 554. The *Evan* Court stated that because the plaintiff-employee had failed to file suit prior to expiration of Title VII's deadline, the defendant-employer had no liability for its earlier bad behavior. *Id.* at 558. The Court stated further, however, that the prior discriminatory acts of the defendant-employer (albeit not independently actionable) were potentially relevant background evidence in a lawsuit that challenged the current practices of the defendant-employer. *Id.* [8]

Here, as discussed earlier, Defendants assert that a number of Plaintiffs' allegations relate to incidents that are time-barred and therefore, off limits when considering any actionable claims of Plaintiffs. Defendants assert further that this Court must strike these "time-barred" allegations from the Amended Complaint as impertinent and immaterial. Defendants are wrong.

Even if this Court were to decide that some of the Defendants' alleged past acts of discrimination were not actionable as part of a hostile work environment, that would not be the end of the analysis. Defendants' earliest alleged discriminatory acts, pre-dating any actionable harassment or misconduct, would nonetheless be essential to Plaintiffs' causes of actions. Once proven, these allegations will be relevant as context evidence to the discriminatory conduct of Defendants that inarguably falls within the various statutes

---

[8] The Court's ruling with respect to the relevancy of prior acts of discrimination as background evidence to support claims of actionable discrimination was reaffirmed in *Morgan*, 536 U.S. at 112.

of limitations.   Therefore, the allegations that Defendants seek to strike as too remote in time for consideration (¶¶ 11-14, 128, 135 and 139) are pertinent and material allegations; and, Plaintiffs respectfully request that this Court deny Defendants' motion to strike these allegations.

## II.   ALLEGATIONS THAT PERTAIN TO DISCRIMINATORY ACTS WHICH DEFENDANTS PERPETRATED AGAINST PERSONS OTHER THAN PLAINTIFFS ARE PERTINENT, MATERIAL AND RELEVANT TO PLAINTIFFS' CLAIMS OF DISCRIMINATION AND HOSTILE WORK ENVIRONMENT AND THUS, THEY ARE NOT SUBJECT TO STRIKE.

Defendants next assert that this Court should strike, as immaterial and irrelevant, any allegation that pertains to discriminatory acts Defendants inflicted upon persons other than Plaintiffs.   Again, Defendants are wrong.   In order to properly assess Plaintiffs' claims, this Court *must* look into Defendants' alleged discriminatory treatment of other persons.   Acts of race and color discrimination related to other persons are essential to Plaintiffs' causes of actions and not subject to strike for two reasons: first, these acts are part of the alleged hostile work environment, the pattern and practice of racial discrimination, and the culture of racial discrimination created and maintained by Defendants; and, second, these acts are, when proven, relevant to show that Defendants' adverse actions against Plaintiffs stem from an unlawful discriminatory motive.   These reasons not to strike the allegations relating to Defendants' treatment of other persons are addressed in turn below.

A.   Allegations Relating to Defendants' Discriminatory Treatment of Persons Other Than Plaintiffs are an Integral Part of Plaintiffs' Hostile Work Environment Claims and Thus, They are Not Subject to Strike.

For more than three decades, Courts within the Eighth Circuit and elsewhere have

16

recognized that a plaintiff-employee's right to work in an environment free from discrimination does not turn upon whether he or she is the direct or intended target of the unlawful treatment. *See e.g., Clayton v. White Hall School District*, 778 F.2d 457, 559 (8th Cir. 1985) (acknowledging a plaintiff-employee has standing to assert a hostile environment claim even if he or she is not a member of the minority group allegedly discriminated against). Evidence of discrimination directed at the co-workers of a plaintiff-employee can support his or her claim of discrimination based on a hostile work environment. *See*, *Madison v. IBP, Inc.*, 257 F.3d 780, 793 (8th Cir. 2001) (discussed herein below); *See also, Anthony v. County of Sacramento*, 898 F. Supp. 1435, 1448 (E.D. Cal. 1995) (discussed herein below). The target of the discrimination need not even be an employee of the defendant-employer because discrimination directed at non-employees can pollute a workplace environment so as to create an actionable hostile environment. *See*, *Rogers v. EEOC*, 454 F.2d 234, 237-238 (5th Cir. 1971) (discussed herein below); *See also, Anthony*, 898 F. Supp. at 1448 (discussed herein below).

In *Madison*, the plaintiff-employee (a Caucasian woman married to an African American man) introduced testimony at trial from her co-workers regarding racist remarks and racial epithets that the defendant-employer had directed at them and not at the plaintiff-employee. *Madison*, 257 F.3d at 791. On appeal, the defendant-employer argued that the trial court erred by admitting the evidence. *Id.* at 793. The defendant-employer asserted that the evidence relating to discrimination inflicted upon non-party, co-workers was irrelevant, prejudicial and confusing. *Id.* The Eighth Circuit rejected the defendant-employer's argument. *Id.* The court ruled that evidence of harassment suffered

by other employees was relevant and admissible as to the issue of whether the defendant-employer maintained a hostile work environment. *Id.*

In *Anthony*, the plaintiff-employee (a former sheriff's deputy and African American woman) sought to establish her hostile work environment claim through testimony regarding misconduct directed at persons other than the plaintiff-employee. *Anthony*, 898 F. Supp. at 1447. Her allegations included claims that white sheriff's deputies mistreated African American prisoners. *Id.* at 1441. For instance, she alleged that a white deputy bragged about beating African American inmates, boasting he had "fucked up another nigger." *Id.* at 1441. In its attempt to exclude such pertinent and material allegations and evidence, the defendant-employer (Sacramento County) argued that allegations relating to racial hostility directed at non-employee persons other than the plaintiff-employee were insufficient to support her claims of discrimination. *Id.* at 1449. Critically, the court rejected the defendant-employer's argument. In agreeing with the plaintiff-employee, the court stated: "It is immaterial that the [racial] insults were not directed at plaintiff personally in every instance, but were used to refer to other black officers, African American civilians, and inmates. When a worker is surrounded by racial hostility, even when only a few instances are directed at her personally, she may recover on a hostile environment theory." *Id.* at 1448 (*quoting, Woods v. Graphic Communications*, 952 F.2d 1195, 1202 (9th Cir. 1991)).

In *Rogers*, the plaintiff-employee (a Hispanic woman) based her hostile work environment charge upon allegations of discriminatory conduct aimed at the patients of the defendant-employer (a hospital). *Rogers*, 454 F.2d at 234, 236-237. The defendant-

employer argued that the discriminatory mistreatment of non-employees (patients of the hospital) was not a basis on which the plaintiff-employee could make a claim for discrimination. *Id.* at 238. The Fifth Circuit rejected the defendant-employer's argument. *Id.* at. 238-239. The court decided that the plaintiff-employee did not need to show that she was the direct target of the discriminatory misconduct that gave rise to her claim. *Id.* Specifically, the court stated that "the [defendant-employer's] failure to direct intentionally any discriminatory treatment toward the [plaintiff-employee] is simply not material to the finding of an unlawful employment practice." *Id.* at 239.

In the present case, Defendants make the same type of argument rejected by the courts in *Madison, Anthony* and *Rogers.* Defendants assert that any allegation which relates to discriminatory treatment of other persons is of no consequence to this action because such an allegation bears no relation to treatment suffered directly by Plaintiffs. However, the *Madison, Anthony* and *Rogers* decisions make it clear that the relevancy of Defendants' race and color-based conduct is not diminished by the fact that some of the behavior may have been aimed at persons other than Plaintiffs, including non-employees (e.g. citizens of color of the City of Minneapolis). Regardless of who was the direct or indirect target of the alleged discriminatory acts of Defendants, the various incidents are united by theme, being part and parcel to a larger pattern and practice, which as a whole constitutes a hostile work environment suffered by Plaintiffs. To the extent they pertain to discrimination against other persons, the allegations in the Amended Complaint (¶¶ 20-21, 24, 26, 30, 34-35, 39-41, 50-52, 54-55, 60, 65-66, 68, 76, 82, 87, 90, 107, 119, 127, 133, and 148) are essential to Plaintiffs' hostile work environment claims. Therefore,

they are not subject to strike under Rule 12(f) and, respectfully, this Court should deny Defendants' motion.

B.   <u>Because They Show That Defendants Were Motivated by an Unlawful Discriminatory Bias in Their Treatment of Plaintiffs, Allegations that Defendants Treated Persons Other Than Plaintiffs in an Unlawful, Discriminatory Manner are a Critical Part of Plaintiffs' Causes of Action and Thus, They are not Subject to Strike.</u>

For at least twenty years, the Eighth Circuit has recognized the critical importance of allowing a plaintiff-employee to use evidence that recounts the unlawful discriminatory treatment which the defendant-employer inflicted upon persons other than the plaintiff-employee. *See, Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1104 (8th Cir. 1988)[9] (discussed below); *See also, Phillip v. ANR Freight Sys., Inc*. 945 F.2d 1054, 1056 (8th Cir. 1991) (reversing a ruling that excluded proof other employment discrimination lawsuits filed against the defendant-employer, on grounds that such evidence may be critical to assess whether the defendant-employer acted from an unlawful motive in dealing with the plaintiff-employee).  Even in non-hostile work environment claims, a defendant-employer's mistreatment of other persons is relevant to show that the defendant-employer more likely than not acted from an unlawful discriminatory motive in its adverse treatment of the plaintiff-employee. *See, Williams v. Con-Agra Poultry Co*., 378 F.3d 790, 794 (8th Cir. 2004) (discussed below).  The importance of such evidence to speak to improper motive is not diminished by the fact that it recounts unlawful discriminatory conduct of which the plaintiff-employee is unaware. *Id.*

---

[9] *Superseded on other grounds by, Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) *as stated in, Foster v. University of Ark*., 938 F.2d 111, 115 (8th Cir. 1991).

In *Estes*, the Eighth Circuit reversed an evidentiary ruling that excluded testimony regarding the manner in which the defendant-employer had treated persons other than the plaintiff-employee. *Estes*, 856 F.2d at 1104.   The court held that evidence of discrimination directed at persons other than the plaintiff-employee, including the defendant-employer's manager telling racist jokes and referring to African American customers as "niggers," was relevant to proving the defendant-employer's likely motivation for discharging the plaintiff-employee. *Id.*  In reaching its decision, the court stated: "circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices—evidence which in other kinds of cases may well unfairly prejudice the jury against the defendant.  In discrimination cases, however, such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from unlawful motive." *Id.* at 1103.

In *Williams*, the plaintiff-employee submitted evidence that the defendant-employer had engaged in racially hostile and discriminatory acts directed at persons other then the plaintiff-employee. *Williams*, 378 F.3d at 794. The Eighth Circuit ruled that, while the testimony regarding treatment of other employees occurring outside the plaintiff-employee's knowledge was irrelevant to showing actionable harassment (it did not constitute part of the hostile environment to which the plaintiff-employee himself had been subjected), such treatment was relevant for other purposes. *Id.* at 794.  First, the court concluded that the evidence made more credible the claims of the plaintiff-employee about the environment to which he was exposed. *Id.*  Second, the court

concluded that the evidence was relevant to assessing the defendant-employer's motive in taking adverse employment actions against the plaintiff-employee. *Id*.  Third, the court concluded that the issue of the defendant-employer's motive was relevant to the plaintiff-employee's claim for punitive damages. *Id*.

In the instant case, this Court may (for the sake of argument) determine that the allegations relating to Defendants' mistreatment of other persons are not, when proven, part of the Plaintiffs' actionable hostile work environment claims.  In the unlikely event this Court makes such a determination, these allegations are, when proven, nonetheless relevant to show a discriminatory motive on the part of Defendants.  If true, Defendants' alleged unlawful actions against other persons show an increased likelihood that an impermissible bias was behind the discriminatory employment actions taken against Plaintiffs.  Therefore, the allegations in the Amended Complaint pertaining to Defendant's discriminatory treatment of other persons (¶¶ 20-21, 24, 26, 30, 34-35, 39-41, 50-52, 54-55, 60, 65-66, 68, 76, 82, 87, 90, 107, 119, 127, 133, and 148) are material, pertinent and important allegations to Plaintiffs' causes of actions.  Respectfully, they are not subject to strike under Rule 12(f) and Defendants' motion should be denied.

C.   Allegations About Defendants' Discriminatory Hiring Practices are Critical to Plaintiffs' Causes of Action and Not Subject to Strike Because They Show That Defendants Were Motivated by Racial Animus in Their Treatment of Plaintiffs.

In race discrimination and retaliatory discharge cases, courts have recognized the importance of allowing a plaintiff-employee to introduce evidence regarding alleged discriminatory hiring practices of a defendant-employer, even where the plaintiff-

employee was not the target of such biased hiring practices. *See*, *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 978, 984 (N.D. Iowa 2004) (discussed below).

In *Jones*, the plaintiff-employee (an African American male) alleged that the defendant-employer discriminated against him because of race and retaliated against him because he complained about the defendant-employer's racially biased hiring practices. *Id.* at 983. The defendant-employer sought to exclude evidence regarding its hiring practices on the grounds that such evidence was irrelevant to the claims of the plaintiff-employee because the plaintiff-employee had not been discriminated against with respect to hiring. *Id.* at 983. The court refused to exclude the evidence, finding that the plaintiff-employee could introduce evidence of discriminatory hiring practices on grounds that: (1) such evidence explains the possible origin of the retaliation claim; and, (2) if the defendant-employer's hiring practices were, in fact, discriminatory, it is more likely that racial discrimination played a part in the plaintiff-employee's termination. *Id.* at 983.

In the present case, the Amended Complaint (¶¶ 17, 27-29, 129, and 144) alleges that Defendants have engaged in discriminatory and biased "hiring practices." Plaintiffs assert that the discriminatory hiring practices of Defendants are, if proven, evidence of a hostile environment. At the same time, these allegations are, if proven, relevant to the question of whether Defendants acted from a discriminatory motive in making adverse employment decisions against Plaintiffs. Moreover, these allegations are also relevant to the question of whether Defendants' alleged retaliatory actions against Plaintiffs were (at least, in part) due to Plaintiffs' complaints regarding the hiring practices. Therefore, the allegations in the Amended Complaint pertaining to Defendant's discriminatory hiring

practices (¶¶ 17, 27-29, 129, and 144) are essential to Plaintiffs' causes of actions.   As such, these allegations are, respectfully, not subject to strike under Rule 12(f).

### III.   ALLEGATIONS ABOUT DEFENDANTS' FAILURE TO INCREASE DIVERSITY AND ENHANCE OPPORTUNITIES FOR MINORITY POLICE OFFICERS SUPPORT AN INFERENCE OF DISCRIMINATORY INTENT; THUS, THESE ALLEGATIONS ARE ESSENTIAL TO PLAINTIFFS' CAUSES OF ACTION AND ARE NOT SUBJECT TO STRIKE.

Courts widely permit a plaintiff-employee suing for discrimination to use evidence regarding a defendant-employer's failure to keep voluntary promises to increase diversity and end discriminatory practices.  *See, Craik v. Minn. State Univ. Bd*., 731 F.2d 465, 472 (8th Cir. 1984) (discussed below); *See also*, *Millburn v. West*, 854 F. Supp. 1, 13 (D.D.C. 1994) (a defendant-employer's failure to follow through on equal employment obligations can support an inference of discriminatory intent).

In *Craik*, the plaintiffs (female employees suing under Title VII and Section 1983) attempted to show they had suffered unlawful discrimination through evidence relating to the defendant-employer's lack of follow through with respect to promises contained in a voluntary, affirmative action plan. *Craik*, 731 F.2d at 472.   The plan set forth goals regarding adoption of hiring practices to increase female representation among the defendant-employer's workforce, as well as goals designed to enhance opportunities for women who were already employed by the defendant-employer. *Id.* at 472-73.   The Eighth Circuit took issue with the lower court's failure to address the defendant-employer's lackluster efforts vis-à-vis its affirmative action promises. *Id.*  The court held

"evidence that an employer has failed to live up to an affirmative-action plan is relevant to the question of discriminatory intent." *Id.* at 472.

In the present case, the Amended Complaint includes allegations relating to Defendants' failures to fulfill promises set forth in the federal mediation agreement aimed at increasing diversity and enhancing opportunities for minority police officers.  Here, as in *Craik*, Defendants' alleged non-performance under the federal mediation agreement is, when proven, potentially relevant to the question of Defendants' discriminatory intent. As potential evidence of discriminatory intent on the part of Defendants, the allegations (¶¶ 77-82) relating to the federal mediation agreement and Defendants' failures to live up to obligations under that agreement are essential to Plaintiffs' claims of race and color discrimination.  Therefore, respectfully, these allegations are not subject to strike under Rule 12(f) and Defendants' motion should be denied.

**IV.    ALLEGATIONS ABOUT RACIST STATEMENTS AND CONDUCT OF DEFENDANT DOLAN AND OTHER HIGH RANKING POLICE OFFICERS SHOW DEFENDANTS WERE MOTIVATED BY A DISCRIMINATORY BIAS IN THEIR TREATMENT OF PLAINTIFFS; HENCE, THESE ALLEGATIONS ARE ESSENTIAL TO PLAINTIFFS' CAUSES OF ACTION AND ARE NOT SUBJECT TO STRIKE.**

For employment discrimination law purposes, "stray remarks" are of two types: (1) statements made by a person who is the decision-maker with respect to an adverse employment action, which statements are unrelated to the adverse action; or (2) statements made by co-workers of the plaintiff-employee who are not decision-makers with respect to an adverse employment action.  *See*, *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 922 (8th Cir. 2000).  Standing alone, stray remarks are insufficient to constitute

direct evidence of discrimination; nonetheless, such remarks are not irrelevant. *Id.* at 922. They are the kind of fact that could cause a jury to "raise an eyebrow," thus providing additional threads of relevant evidence. *Id.* at 922-923 (*citing*, *Bevan v. Honeywell, Inc.*, 118 F.3d 603, 610 (8th Cir. 1997)).  Stray remarks are circumstantial evidence that, when considered alongside other evidence, may give rise to a reasonable inference of discrimination. *Id.* at 923.  For instance, a plaintiff-employee may use the stray remarks of a decision-maker to help show that racial-bias was the actual motive for an adverse employment action.  *See*, *Frison v. S.E. Mo. Cmty. Treatment Ctr.*, 133 F.3d. 616, 621 (8th Cir. 1998) (discussed below).  Similarly, a plaintiff-employee, in making his or her case, may use the stray remarks of non-decision makers as indirect evidence of unlawful, discriminatory animus.  *See*, *Yates v. Rexton*, 267 F.3d 793, 801 (8th Cir. 2001) (finding that while statements of non-decision makers could not themselves support a finding of discrimination, such statements could, when considered along with other evidence of pretext, be sufficient to support an inference of discrimination); *See also*, *Jones*, 490 F. Supp. 2d at 986 (N.D. Iowa 2007) (discussed below).

A.    Because Allegations Regarding Racist and Discriminatory Statements Made by Plaintiffs' Co-workers and Defendants' Tolerance of Such Statements are Circumstantial Evidence of Racial Bias, These Allegations are Integral to Plaintiffs' Causes of Action and They are Not Subject to Strike.

In *Jones* (also discussed *supra*), the plaintiff-employee (an African American male) sought to support his claim of discrimination through evidence consisting of racist statements made by his co-workers 490 F. Supp. 2d at 985. He also sought to introduce evidence regarding the defendant-employer's lackadaisical response to his complaints

about such racist statements. *Id.* The defendant-employer objected to the evidence as being irrelevant. *Id.* The court rejected the defendant-employer's argument and concluded that the racist comments of non-supervisory co-workers were relevant for the following reasons: "If [the plaintiff-employee] can show that the [defendant-employer] tolerated, minimized or failed to adequately discipline employees who use racist language in the workplace, then it is more likely that a discriminatory motive played a part in [the plaintiff-employee's] termination." *Id.* at 986.

In the present case, as in *Jones*, Defendants seek to strike allegations (¶¶ 12 and 15) regarding racist statements made with impunity by some of Plaintiffs' co-workers, in general, and by Lt. Kroll, in particular. Defendants assert that such allegations, if proven, constitute nothing more than "stray remarks" attributable to a non-decision maker. (See Defendants' Memo. of Law, Pg. 11). This Court may (for the sake of argument) determine that Lt. Kroll's and other officers' alleged statements were no more than "stray remarks" and thus, irrelevant to prove a hostile work environment or to show direct evidence of unlawful discrimination. Even in this unlikely event, the statements remain relevant for other reasons. Ultimately, Lt. Kroll's and other officers' racist and discriminatory statements as well as Defendants' failure to respond appropriately to such statements are indirect evidence of bias. In this regard, such statements are essential to Plaintiffs' causes of action and the defenses to these claims. Because these allegations relate to matters essential to this case, they are, respectfully, not subject to strike under Rule 12(f) and Defendants' motion should be denied.

B.   <u>Allegations Recounting Prior Racist Conduct by Defendant Dolan are Relevant Circumstantial Evidence of Bias and Thus, They are Essential to Plaintiffs' Claims and are Not Subject to Strike</u>.

In *Frison*, the plaintiff-employee (an African American male) sought to use the alleged stray remarks of his supervisor who had recommended his termination as evidence to support his claim of discrimination. *Frison*, 133 F.3d at 620.  The statements at issue in *Frison,* the supervisor's alleged comment that too many African Americans were moving into the defendant-employer's community, were unrelated to the plaintiff-employee's employment status and bore no relation to the defendant-employer's business. *Id.* at 618.   As such, the statements were too remote to constitute direct evidence of discrimination. *Id.* at 619.  Nonetheless, the court recognized that the alleged statements of the supervisor were, if proven, still valuable pieces of indirect evidence of bias. *Id.* at 620.  In reaching its decision, the court stated: "While these stray remarks fall short of direct evidence of discrimination, they tend to prove that any pretextual reasons for discharge were proffered to hide intentional race discrimination." *Id.*

In the present case, Defendants seek to strike allegations (¶ 16) pertaining to the alleged racist conduct of Defendant Dolan. Here, as was the situation in *Frison*, the alleged conduct is remote from any employment decision that Dolan may have made to the detriment of Plaintiffs. At trial, this Court may find that these allegations are not admissible to show *direct evidence* of discrimination. Still, as the *Frison* decision illustrates, such conduct by a decision-maker like Dolan is not irrelevant.  The alleged conduct of Dolan is essential to Plaintiffs' causes of action because it is, if true, *indirect evidence* of discrimination. Because it's essential to Plaintiffs' causes of action,

respectfully, these allegations pertaining to Defendant, Dolan's prior racist conduct are not subject to strike under Rule 12(f) and Defendants' motion should be denied.

C.   <u>Allegations Pertaining to Defendant Dolan's Prior Racist Conduct are Highly Relevant To Plaintiffs' Causes of Action and Therefore They are Not Subject to Strike as Being "Scandalous" Matters</u>.

As cited earlier, a motion seeking to strike an allegation as "scandalous" will be denied if the statements at issue are relevant to the cause of action. *Madison*, 112 F.R.D. at 547.  Other courts have recently recognized that in race discrimination cases, evidence regarding a plaintiff-employees' direct supervisor's past alleged hate crime is both relevant and admissible. *See, Abner v. Kansas City So. R.R.*, __ F.3d __, 2008 WL 40106 (5th Cir. 2008) (discussed below).

In *Abner*, the Fifth Circuit rejected the defendant-employer's argument that the trial court committed reversible error by admitting evidence of a prior KKK-related conviction of the direct supervisor of the African American plaintiff-employees.  After careful consideration, the trial court had determined that the probative value of the prior conviction outweighed its prejudicial value. *Id.* at *9.  The Fifth Circuit affirmed the trial court on this evidentiary ruling.  The court further determined that the jury could have reasonably determined that the defendant-employer was liable for creating and failing to correct a racially hostile work environment. *Id.*

In the present case, common sense (a notion that too seldom finds its way into legal arguments) shows how the alleged, prior hate crimes of Defendant Dolan are, if true, relevant to Plaintiffs' causes of action.  In addition, the relevancy of Dolan's alleged prior racist acts is illustrated by the analogous decision of the Eighth Circuit in *Frison*

(discussed *supra*).  Moreover, the *Abner* decision of the Fifth Circuit shows that such evidence may ultimately be admissible over claims of undue prejudice.  Prior to trial, this Court may rule that evidence of Dolan's prior misconduct, albeit relevant, is possibly too prejudicial for a jury's consideration.  However, now is not the time for this Court to make such a determination, and a Rule 12(f) motion is not the proper means to raise the evidentiary objection.[10]  For purposes of the instant case and this motion, because the allegations relating to Dolan's alleged prior hate crimes are, if true, potentially relevant and admissible evidence, these allegations are not "scandalous."  Respectfully, therefore, these allegations are not subject to strike under Rule 12(f) and Defendants' motion should be denied.

## CONCLUSION

As stated first and above, for today's purposes, this Court must take all of the Plaintiffs facts as plead, draw all reasonable inferences in Plaintiffs' favor, and resolve all doubts in favor of denying Defendants' motion to strike.[11]  Moreover, the applicable standard of judgment dictates that this Court must deny Defendants' Rule 12(f) motion upon even the slightest doubt as to whether or not the Plaintiffs' allegations raise issues relevant and material to their causes of action or the defenses in this case.[12]  Defendants have failed to show that any of the challenged allegations are immaterial, impertinent or scandalous.  Likewise, Defendants have failed to demonstrate that inclusion of the

---

[10] Any claim of unfair prejudice on the part of Defendants is mitigated by the fact that the pleadings will not be among the evidence submitted for a jury's consideration.

[11] *See, Jankovic*, 429 F. Supp. 2d at 170

[12] *Southwestern Bell Tel., L.P.*, 461 F. Supp. 2d at 1064.

challenged allegations in the Amended Complaint constitutes unfair prejudice to Defendants.   No unwarranted inferences about Defendants are made by the challenged allegations, nor is their temporal scope inappropriate in light of the hostile work environment claims brought by Plaintiffs.   For these reasons, Plaintiffs respectfully request this Court deny in its entirety Defendants' motion to strike portions of the Amended Complaint.

Respectfully submitted,

**JOHN A. KLASSEN, PA**

Dated: January 23, 2008                        /s/ John A. Klassen
                                               John A. Klassen, (No. 24434X)
                                               700 Lumber Exchange Building
                                               10 South Fifth Street
                                               Minneapolis, MN. 55402
                                               612-204-4533

**MULLER & MULLER, PLLC**

/s/ Andrew P. Muller
Andrew P. Muller (No. 32467X)
3109 West 50th Street, No. 362
Minneapolis, MN. 55410-2102
(612) 604-5341

**ATTORNEYS FOR PLAINTIFFS**